# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| PATRICIA NOKES, *et al.*, | ) | CASE NO. 1:09-cv-00194 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| PETSMART, INC., | ) | |
| | ) | |
| Defendant. | ) | **MEMORANDUM OPINION & ORDER** |

This matter is before the Court pursuant to the consent of the parties.  (Doc. No. 13.)  On March 2, 2009, Plaintiffs Patricia and Brad Nokes (collectively "Plaintiffs") filed a Motion to Remand to State Court.  (Doc. No. 9.)  Defendant Petsmart, Inc. ("Defendant") filed its brief in opposition on March 16, 2009.  (Doc. No. 11.)  For reasons set forth below, Plaintiffs' Motion to Remand is GRANTED.

## I.  Procedural Background and Facts

On or about December 22, 2006, Plaintiff Patricia Nokes ("Mrs. Nokes") slipped and fell at Defendant's store in Elyria, Ohio.  (Compl. at ¶5.)  Mrs. Nokes claims to have injured her head, jaw, mouth, lower back, hip, leg, ankle, and arm.  *Id*. at ¶6.

At some point prior to obtaining counsel or instituting a lawsuit, Mrs. Nokes notified Defendant's counsel that she was willing to settle her claim for ninety-five thousand ($95,000)

dollars.  (Doc. No. 1, Exh, 2.)  *Id.*  Mrs. Nokes's demand contained a list of "out-of-pocket"

medical expenses, property damage, and lost deposits for a Hawaiian vacation totaling

$4,960.80.  *Id.*  She also indicated that she had "a potential of another $7-9000" in additional

expenses.  *Id.*  She believed her claim was worth between one-hundred forty and one-hundred

fifty thousand ($140,000-150,000) dollars, a total reached by adding together her actual and her

potential expenses (approximately $14,000) and then multiplying "according to specials of ten."

*Id.*

On December 22, 2008, Mrs. Nokes and her husband Brad Nokes, *pro se*, filed a Complaint

in the Lorain County Court of Common Pleas alleging "Gross Negligence, Negligence and/or

Strict Premises Liability" and loss of consortium.  (Doc. No. 1, Exh. 1.)  Both Mr. And Mrs.

Nokes sought in excess of twenty-five thousand ($25,000) dollars in compensatory damages for

their individual claims.  *Id.*

On January 27, 2009, Defendant filed a Notice of Removal claiming diversity of citizenship

and an amount in controversy in excess of seventy-five thousand ($75,000) dollars.  (Doc. No.

1.)  Thereafter, Plaintiffs filed their aforementioned Motion to Remand.

## II.  Standard and Law

### A.  Removal/Remand

"The district courts of the United States . . . are courts of limited jurisdiction.  They possess

only that power authorized by Constitution and statute."  *Exxon Mobil Corp. v. Allapattah*

*Servs.*, 545 U.S. 546 (2005) (internal quotation marks omitted.)  While Plaintiffs originally filed

this case in state court, the removal statute, 28 U.S.C. § 1441, "authorizes" a defendant to

remove "civil actions from state court to federal court when the action initiated in state court is

one that could have been brought, originally, in a federal district court." *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 821 (6th Cir. 2006) (*quoting Lincoln Prop. Co. v. Roche*, 546 U.S. 81 (2005)).

In addition to giving federal district courts original jurisdiction over cases arising under federal law, *see* 18 U.S.C. § 1331, Congress "has granted district courts original jurisdiction in civil actions between citizens of different States, between U.S. citizens and foreign citizens, or by foreign states against U.S. Citizens, to provide a neutral forum for what have come to be known as diversity cases, . . .." *Exxon Mobil*, 545 U.S. 546, 552; *see* 18 U.S.C. § 1332. "To ensure that diversity jurisdiction does not flood the federal courts with minor disputes, § 1332(a) requires that the matter in controversy in a diversity case exceed a specified amount, currently $75,000." *Id.*

Under 28 U.S.C. § 1447(c), cases originally filed in a state court must be remanded prior to trial if it appears the federal district court to which the matter was removed lacks subject matter jurisdiction. *See Coyne v. The American Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999). ("[I]n a removed action, upon determination that a federal court lacks jurisdiction, remand to state court is mandatory.") "Generally, because the plaintiff is the 'master of the claim,' a claim specifically less than the federal requirement should preclude removal." *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000). Normally, "the sum claimed by the plaintiff[s] controls." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 156 (6th Cir. 1993).

A defendant seeking removal bears the burden of showing that proper subject matter jurisdiction exists. *Ahearn v. Charter Township of Bloomfield*, 100 F.3d 451, 453 (6th Cir. 1996). Furthermore, a defendant wishing to remove a case bears the burden of satisfying the amount-in-

-3-

controversy requirement.  *Gafford*, 997 F.2d at 155.  A defendant "must do more than show a mere possibility that the jurisdictional amount is satisfied."  *Id*.  The applicable burden for the defendant is to establish that the amount will "more likely than not" be met.  *Rogers*, 230 F.3d at 871 (*citing Gafford*, 997 F.2d at 157-58).

### III.  Legal Analysis

Plaintiffs contend that it was inappropriate for Defendant to remove this action based on their *pro se* demand letter.  (Doc. No. 9.)  Specifically, Plaintiffs argue that their demand letter is inadmissible pursuant to Fed. R. of Evid. 408.  *Id*.  It is Plaintiffs' position that, absent the demand letter, there is no evidence that the jurisdictional amount of $75,000 has been met.  *Id*.  In conjunction with their motion, Plaintiffs have submitted an affidavit from Mrs. Nokes indicating that her injuries, a fractured coccyx and a tooth injury requiring a root canal, resulted in medical bills totaling less than three-thousand ($3,000) dollars.[1]  (Doc. No. 9, Exh. A.)

First, Mrs. Nokes's affidavit that her medical bills are less than $3,000 is insufficient, in and of itself, to defeat jurisdiction.  Defendant points out that the affidavit only addresses medical bills and is silent on the issue of whether the total amount in controversy exceeds $75,000.  (Doc. No. 11 at 4.)  The Court, however, ascribes minimal weight to her affidavit for another reason – namely that when considering the appropriateness of a remand, a court should consider whether federal jurisdiction existed *at the time of removal*.  *See, e.g., Roddy v. Grand Trunk W. R.R.*, 395 F.3d 318, 322 (6th Cir. 2005) ("[W]e look to the complaint at the time of removal and determine whether the action was properly removed in the first place."); *Ahearn v.*

---

[1]  Plaintiffs have not challenged Defendant's assertion that there is diversity of citizenship.  As such, the decision whether to remand this matter hinges entirely on whether the amount in controversy has been satisfied.

*Charter Twp.*, 100 F.3d 451, 453 (6th Cir. 1996).  "[P]ost-removal events reducing the amount recoverable below the jurisdictional minimum, whether beyond the plaintiff's control or the result of his stipulation, affidavit, or amendment of his pleadings, do not oust the District Court's jurisdiction once it has attached."  *Conder v. Best Value Inc.*, 2008 U.S. Dist. LEXIS 82178 (W.D. Ky. Oct. 15, 2008) (*citing St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 290 (1938)).[2]  Finally, a plaintiff's stipulation that the amount in controversy is under $75,000, in order to defeat federal jurisdiction, has been rejected by the Sixth Circuit on the grounds that it encourages forum shopping.  *See Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 873 (6th Cir. 2000); *Ewers v. Genuine Motor Cars*, 2007 U.S. Dist. LEXIS 92445 (N.D. Ohio Dec. 14, 2007) ("Post-removal stipulations by the plaintiff are ineffective to deprive the Court of jurisdiction.")

According to Sixth Circuit law, "[t]he general rule in diversity cases is that the amount claimed by a plaintiff in his complaint determines that amount in controversy, unless it appears to a legal certainty that the claim is for less than the jurisdictional amount."  *Saltire Industrial, Inc. v. Waller, Lansden, Dortch & Davis*, 491 F.3d 522, 531 (6th Cir. 2007) (*quoting Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 884 (6th Cir. 2005)).  "It is generally agreed that the amount in controversy should be determined 'from the perspective of the plaintiff, with a focus on the economic value of the rights he seeks to protect.'"  *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 376 (6th Cir. 2007) (*quoting Buckeye Recyclers v. CHEP USA*, 228 F. Supp. 2d 818, 821 (S.D. Ohio 2002)).  However, when a complaint is not dispositive, the court also considers the

---

[2]  According to *Shanaghan v. Cahill*, 58 F.3d 106, 111 (4th Cir. 1995), the *St. Paul* decision was superseded by statute.  However, that decision was primarily concerned with supplemental jurisdiction, as defined in 28 U.S.C. § 1367, and its interplay with the *St. Paul* rule requiring retention of jurisdiction over cases falling below the jurisdictional threshold so long as the amount alleged in the complaint was made in good faith.  *Id.*

allegations in the notice of removal.  *See Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995), *cited with approval by Nat'l Nail Corp. v. Moore*, 139 F. Supp. 2d 848, 849 (W.D. Mich. 2001); *Thompson v. Donald Lee Fritsch & Schneider Specialty*, 966 F. Supp. 543, 545 (E.D. Mich. 1997).  In viewing the actual Complaint, Plaintiffs allege two causes of action, a negligence claim and a corresponding loss of consortium claim, and they seek in excess of $25,000 in compensatory damages for *each* claim.[3]

Although Plaintiffs are husband and wife, they, nonetheless, constitute multiple plaintiffs. "The general rule is that while separate and distinct claims may not be aggregated, aggregation is permissible when 'two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest.'"  *Sellers v. O'Connell*, 701 F.2d 575, 579 (6th Cir. 1983) (*quoting Snyder v. Harris*, 394 U.S. 332, 335 (1969)).  "An identifying characteristic of a common and undivided interest is that if one plaintiff cannot or does not collect his share, the shares of the remaining plaintiffs are increased."  *Id*.  At least two decisions from within this circuit have found that a loss of consortium claim may not be aggregated with the spouse's underlying claim to reach the jurisdictional amount.  *See Poplar v. KKI, LLC*, 2005 U.S. Dist. LEXIS 24803 (W.D. Ky. Oct. 21, 2005) (Because the fact that an injured spouse prevails on his or her claim does not of itself necessarily require an award of damages to the other spouse, who alleges loss of consortium, the latter claim was not based on a common and undivided interest.); *Ayers v. Taylor*, 1995 U.S. Dist. LEXIS 17198 (W.D. Mich. Sept. 22, 1995) (declining to aggregate Ms. Ayers's Loss of Consortium claim with any of her husband's claims as they are

---

[3]  Pursuant to Ohio. R. Civ. P. 8(A), "[i]f the party seeks more than twenty-five thousand dollars, the party shall so state in the pleading but shall not specify in the demand for judgment the amount of recovery sought ...."

-6-

"separate and distinct" and their interests were not "common and undivided."); *see also Martinez v. J.C. Penney Corp.*, 2008 U.S. Dist. LEXIS 42730 (S.D. Fla. May 28, 2008) (although loss of consortium claims are derivative under Florida law, the underlying injury is "separate and distinct" and should not be aggregated).

Defendant contends that the jurisdictional amount is satisfied because Plaintiffs jointly seek an amount in excess of $50,000.  Defendant, however, cannot aggregate Plaintiffs' claims to reach the jurisdictional amount.  Clearly, Defendant cannot meet the burden to sustain removal based solely upon the allegations in the Complaint.  This, the Defendant all but concedes by acknowledging that the Complaint also incorporates an amount below the jurisdictional threshold.  (Doc. No. 11 at 3.)

Therefore, in the end, Defendant potentially establishes the requisite threshold only through Plaintiffs' aforementioned demand letter submitted prior to the commencement of this suit.  It is Plaintiffs' position that the evidentiary rules bar its consideration.  Federal Rule of Evidence 408 reads as follows:

> Rule 408.  Compromise and Offers to Compromise
>
> (a) Prohibited uses. Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction:
>
>   (1) furnishing or offering or promising to furnish--or accepting or offering or promising to accept--a valuable consideration in compromising or attempting to compromise the claim; and
>
>   (2) conduct or statements made in compromise negotiations regarding the claim, except when offered in a criminal case and the negotiations related to a claim by a public office or agency in the exercise of regulatory, investigative, or enforcement authority.

> (b) Permitted uses.  This rule does not require exclusion if the evidence is offered
> for purposes not prohibited by subdivision (a).  Examples of permissible purposes
> include proving a witness's bias or prejudice; negating a contention of undue
> delay; and proving an effort to obstruct a criminal investigation or prosecution.

Neither party cites any case law addressing the issue of whether a federal court's consideration of a demand letter for purposes of establishing the amount in controversy violates the rule. Based on this Court's review, it is not improper for a court to consider a Plaintiff's demand letter when assessing whether the requisite amount in controversy has been met.  *See, e.g., Finnegan v. Wendy's Int'l Inc.*, 2008 U.S. Dist. LEXIS 88868 (S.D. Ohio May 13, 2008) (observing that other courts have held that Fed. R. Evid. 408 "does not preclude the use of settlement offers to establish the amount in controversy"); *Kabara v. Kiffmeyer*, 2005 U.S. Dist. LEXIS 26559 (E.D. Ky. Nov. 1, 2005) (considering pre-suit demand letter of $100,000 as evidence that the jurisdictional requirement was satisfied); *Deutsche Bank Nat'l Trust Co. v. Mitchell*, 2008 U.S. Dist. LEXIS 55545 (E.D. Ky. Jul. 18, 2008) (considering a demand letter and its effect on the timeliness of removal); *Carver v. Wal-Mart Stores, Inc.*, 2008 U.S. Dist. LEXIS 38786 (M.D. La. May 13, 2008) (rejecting the argument that Fed. R. Evid. 408 prohibits the use of settlement offers in determining the amount in controversy).  As explained by one court, the purpose of Fed. R. Evid. 408 is to encourage settlements, and that goal is not undermined by allowing the use of a demand letter in a notice of removal.  *See Archer v. Kelly*, 271 F. Supp.2d 1320 (N.D. Okla. 2003).  Use of a demand letter in this context does not risk an admission of liability or an admission to the finder of fact as to the true amount of the liability.  *Id*.  Therefore, Defendant's use of Plaintiffs' demand letter does not run afoul of Fed. R. Evid. 408.

Nevertheless, "before a demand letter can be considered 'relevant evidence of the amount in controversy,' the Court must determine that it 'reflect[s] a reasonable estimate of the

-8-

plaintiff's claim.'" *Conder v. Best Value Inc.*, 2008 U.S. Dist. LEXIS 82178 at *4 (citations omitted); *Carver*, 2008 U.S. Dist. LEXIS 38786 at **6-7 (consideration of settlement offers is permissible "when [it] reflects an *honest assessment* of the value of the plaintiff's claims") (emphasis added).

Mrs. Nokes's demand letter identifies approximately $5,000 in actual damages and only the potential of an additional $7,000 to $9,000 in medical bills.[4] (Doc. No. 1, Exh. 2.) She then multiplies her claim of $14,000 "according to the specials of ten" to arrive at $140,000 in damages. The demand letter does not, however, identify any reasonable basis for Mrs. Nokes's demand of a sum ten times the amount of her definitely ascertainable damages.[5] In addition, the "potential" for additional expenses is speculative at best. It bears noting that Plaintiffs are not seeking punitive damages. Also, though the Complaint contains a request for attorneys' fees, "[a]s a general rule, attorneys' fees are excludable in determining the amount in controversy for purposes of diversity, unless the fees are provided for by contract or where a statute mandates or expressly allows the payment of such fees." *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 376 (6th Cir. 2007) (*citing Clark v. Nat. Travelers Life Ins. Co.*, 518 F.2d 1167, 1168 (6th Cir. 1975)). Here, attorneys' fees are not claimed as part of a contract and there is no applicable statutory right to recover them.

However, Mrs. Nokes is seeking unliquidated damages for pain and suffering and future

---

[4] The additional amount appears to be based on the possibility that she may require a dental implant to replace the injured tooth, which she estimates at a cost of $8,000. (Doc. No. 1, Exh. 2.)

[5] To reach the $75,000 threshold, Mrs. Nokes's claim would have to be slightly over five times greater than the $14,000 amount or, in other words, an additional $61,000.

medical treatment.  "Unliquidated damages are damages which cannot be determined by a fixed formula and must be established by a judge or jury.  Examples of unliquidated damages are damages for pain and suffering, future medical expenses and future lost wages."  *Weaver v. Caldwell Tanks, Inc.*, 190 Fed. Appx. 404, 414 (6th Cir. 2006) (*citing Black's Law Dictionary* 419 (8th ed. 2004)).  Certainly, it would not be unprecedented for an injured plaintiff to recover far more for pain and suffering than her actual out-of-pocket medical expenses.  Nonetheless, there is no basis to infer damages in this category in excess of $61,000 and such an inference is wholly speculative.  Keeping in mind that (1) the party seeking removal bears the burden of establishing its right thereto and (2) removal petitions are to be strictly construed with all doubts resolved against removal, the Court is not persuaded that the Mrs. Nokes's claim has met the jurisdictional amount.  *See Her Majesty the Queen in Right of Province of Ontario v. Detroit*, 874 F.2d 332, 339 (6th Cir. 1989) (*citing Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97-98 (1921)).

Other courts in analogous circumstances have also found that the jurisdictional requirement had not been sufficiently demonstrated.  *See, e.g., Herron v. C&S Wholesale Grocers, Inc.*, 2008 U.S. Dist. LEXIS 102993 (M.D. Ga. Dec. 22, 2008) (a prayer for relief "in excess of $ 16,072" for medical expenses and additional unspecified claims for "general damages, including pain and suffering, both mental and physical" did not satisfy the jurisdictional requirement and the matter was remanded); *Kresge v. Jackson*, 2004 U.S. Dist. LEXIS 20850 (N.D. Ill. Oct. 14, 2004) (finding that Plaintiffs' pre-suit demand of $75,000 did not sufficiently establish that the amount in controversy had been met as Defendant offered no facts to support their position other than the settlement demand, which might have been made at a much higher value as part of a bargaining

-10-

strategy); *Doughty v. Hyster New Eng., Inc.*, 344 F. Supp. 2d 217, 219 (D. Me. 2004) ($85,000 settlement demand by plaintiff was insufficient to establish the jurisdictional amount where plaintiff's medical expenses and lost wages totaled only $3,476); *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1091 (9th Cir. 2003) (amount in controversy was not sufficiently established for federal jurisdiction where value of Plaintiff's truck was $15,516 despite additional claims for emotional distress and punitive damages).  In perhaps the most similar case, a plaintiff submitted two pre-suit demand letters, the first asking for $95,000 and the second seeking $90,000.  *See Wang v. Pac. Cycle, Inc.*, 530 F. Supp. 2d 1048, 1051 (S.D. Iowa 2008).  However, the letters also indicated that plaintiff incurred only $6,430.27 in past medical expenses and estimated future medical expenses of $13,280.  *Id*.  The *Wang* court found that the jurisdictional threshold had not been satisfied and the demand was merely the product of posturing by plaintiffs' counsel.  *Id*.  Likewise, Mrs. Nokes's unrepresented posturing prior to the initiation of the suit does not present a reasonable valuation of her claim where the sum of her actual and estimated future damages is five times less than the requisite amount in controversy.

Finally, as Mr. Nokes's loss of consortium claim is derivative of his spouse's claim, his damages cannot exceed that of Mrs. Nokes.  *See, e.g., Messmore v. Monarch Machine Tool Co.*, 463 N.E.2d 108, 11 Ohio App. 3d 67 (Ohio Ct. App. 1983) ("A cause of action based upon a loss of consortium is a derivative action and as such cannot afford greater relief than that which would be permitted under the primary cause of action.  Therefore, an award for loss of consortium cannot exceed that percentage of damages recoverable by the injured spouse."); *accord Barlow v. Thorne Foods, Inc.*, 1986 Ohio App. LEXIS 8543 (Ohio Ct. App. Oct. 1,

1986).

In summary, based on the Complaint and Plaintiffs' demand letter, neither of Plaintiffs' damages can reasonably be estimated to meet the minimum jurisdictional requirement and they may not be aggregated to reach the jurisdictional amount.  Nonetheless, although removal was improper, Defendant did not lack an objectively reasonable basis for seeking removal.

### IV.  Conclusion

For the foregoing reasons, Plaintiffs' Motion to Remand is GRANTED.

s/ Greg White_____
U.S. MAGISTRATE JUDGE

Date: April 23, 2009

-12-